## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DEBORAH KEEN (JAMISON),             :

     Plaintiff,                    :
                               Case No. 3:13cv00417

  vs.                               :

                                District Judge Thomas M. Rose

CAROLYN W. COLVIN,                  :   Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,            :

     Defendant.                    :

---

## REPORT AND RECOMMENDATIONS[1]

---

**I.**    __Introduction__

      Plaintiff Deborah Jamison filed applications for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") on November 5, 2010.  (*PageID##*

201-16).  She alleged that she became unable to work beginning May 8, 2010 due to

degenerative disc disease, back surgery, high blood pressure, and high cholesterol.

(*PageID##* 244).  After various administrative proceedings, Administrative Law Judge

("ALJ") Joseph P. Donovan, Sr., denied Plaintiff's applications based on his conclusion

that Plaintiff's impairments did not constitute a "disability" within the meaning of the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

Social Security Act.  (*PageID##* 43-54).  The ALJ found that despite Plaintiff's impairments she still had the residual functional capacity ("RFC")[2] to perform a restricted range of sedentary work and there were a significant number of jobs in the national and regional economy that Plaintiff could perform.  (*PageID##* 52-54). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration.  (*PageID##* 32-34).  Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is presently before the Court upon Plaintiff's Statement of Errors (Doc. # 9), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), the administrative record (Doc. #6), and the record as a whole.

## II.  <u>Background</u>

### A.  <u>Plaintiff's Testimony</u>

Plaintiff was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  20 C.F.R. §§ 404.1563, 416.963; *PageID#* 52.  Plaintiff has a high school education, *see* 20 C.F.R. § 416.964(b)(4); *PageID#* 52, and past relevant work experience as a sales clerk, bartender, and cook.  (*PageID#* 52).

Plaintiff testified at the administrative hearing held on July 31, 2012 that she was not currently working and had not worked since her alleged disability onset date of May

---

[2]The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

8, 2010.  (*PageID#* 63).  She stated she has no income, and that her daughter and a friend

pay all of her bills.  (*Id.*).  They have been paying her bills since June 2010.  (*Id.*).

Plaintiff lives by herself.  (*Id.*).  She testified she can bathe herself, but a friend does her

housework for her.  (*Id.*).  Plaintiff stated the amount of time she can sit varies: "Some

days I can sit 45 minutes, maybe an hour.  Other days, I can only sit 10 to 15 minutes."

(*Id.*).  She estimates she can stand for 15 or 20 minutes without pain.  (*Id.*).  Plaintiff can

walk two blocks.  (*PageID#* 65).  She can crouch down, bend at the hips, and bend at the

knees, "but it hurts."  (*Id.*).  She does not believe she can get on her hands and knees and

move about.  (*Id.*).  Plaintiff has a driver's license and drove herself to the hearing.  (*Id.*).

She can reach in all directions with both arms, and estimates she can lift 5 to 8 pounds

with her left hand (dominant), but "no more than five" with her right hand.  (*PageID#*

66).  She does not use a cane or assistive device to walk.  (*PageID#* 67).  She is able to

button, buckle, dress, undress, and take care of her personal hygiene on a daily basis.

(*Id.*).  Her sense of smell is diminished.  (*Id.*).  She has no sensitivity to bright lights, loud

noise, and darkness.  (*Id.*).

Plaintiff testified she had back surgery in 2010.[3] (*PageID#* 72).  She stated the

surgery actually made her back pain worse because now she has severe burning and

numbness in her lower back, primarily on her left side.  (*Id.*).  She stated the pain

intensifies when she stands too long, sits too long, and bends over.  (*Id.*).  The pain is

---

[3] Plaintiff underwent micro lumbar discectomies at L4-L5 and L5-S1 on June 22, 2010.
(*PageID##* 315-16).

3

alleviated when she lies down or "stay[s] off [her] feet." (*Id.*). She spends more than ½ the day lying down. (*Id.*). She testified the pain can last for a few hours or a few days. (*PageID#* 73). She estimates she has four to five "bad" days per week. (*Id.*). Plaintiff is taking Neurontins and Percocets for her pain. (*Id.*). She has not had health insurance since December 2010, when her short term disability insurance ran out from her job. (*Id.*).

**B.** **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the Commissioner and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's impairments with citations to specific evidence.

**III.** **Administrative Review**

**A.** **"Disability" Defined**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing

4

his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B.  Social Security Regulations

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See PageID## 44-45; see also* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. 404, Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

5

F.3d 348, 354 (6th Cir. 2001).

   **C.     ALJ Donovan's Decision**

   At Step 1 of the sequential evaluation, the ALJ found that Plaintiff has not engaged

in substantial gainful activity since May 8, 2010, the alleged onset date.  (*PageID#* 45).

   At Step 2 of the sequential evaluation, the ALJ concluded that Plaintiff has the

severe impairment of Degenerative Disc Disease.  (*Id.*).

   The ALJ concluded at Step 3 that Plaintiff did not have an impairment or

combination of impairments that met or equaled one of the Listings, including section

1.04.  (*PageID#* 47).

   At Step 4, the ALJ evaluated Plaintiff's RFC and found the following:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to lift and carry 10 pounds
> occasionally and less than 10 pounds frequently; sit for 6 hours in an 8 hour day
> with an at-will sit/stand option; stand and walk 2 hours in an 8 hour day;
> frequently use controls, feel, finger, handle, and reach; occasionally climb ramps
> and stairs, balance, stoop, kneel, crouch, crawl, and bend; never climb ladders,
> ropes, and scaffolding; avoid concentrated chemicals, fumes, dust, dander, and
> mold; avoid all unprotected heights, hazardous machinery, and industrial
> vibrations; understand, remember, and carry out simple, repetitive, and unskilled
> tasks; consistently interact with the general public, supervisors, and coworkers;
> stay on-task for at least 92% of the workday with an 8% maximum loss in
> productivity; and constantly respond to routine changes in the work setting.

(*PageID#* 47).  The ALJ further determined that Plaintiff's statements concerning her

impairments and their impact on her ability to work are inconsistent with the record as a

whole and not entirely credible.  (*PageID#* 48).  The ALJ found Plaintiff could not

perform her past relevant work as a sales clerk, bartender, and cook.  (*PageID#* 52).

At Step 5, based on the testimony of the VE, the ALJ concluded that – considering Plaintiffs's age, education, work experience, and RFC – she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as the occupations of addresser, laminator, and table worker.  (*PageID#* 53).

This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and therefore not eligible for DIB or SSI.  (*PageID#* 53-54).

## IV.   **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of

7

"more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.    Discussion**

    **A.    Plaintiff's Contentions**

Plaintiff first contends the ALJ failed to consider and weigh the testimony from a medical expert regarding Plaintiff's back pain.  (Doc. #9, *PageID#* 456).  Plaintiff argues that despite providing great weight to the testimony of medical expert Dr. Ezike, "the ALJ makes no reference to nor does he . . . attempt to weigh Dr. Ezike's opinions regarding Plaintiff's pain symptoms."  (*Id.*).  Next, Plaintiff contends the vocational expert's testimony does not meet the Commissioner's burden to establish that other work exists in significant numbers which she can perform.  (*PageID#* 458).  Plaintiff also argues the ALJ's findings regarding the opinion of her treating physician, Dr. Minella, are

unreasonable and unsupported.  (Doc. #9, *PageID#* 459).  Finally, Plaintiff contends the

ALJ's adverse credibility finding is without adequate support and explanation such as to

merit judicial deference.  (*PageID#* 9, *PageID#* 462-64).  As a result of these alleged

errors, Plaintiff requests the Court reverse the Commissioner's non-disability finding and

consider remanding the case for an award of benefits rather than further administrative

proceedings.  (*PageID#* 464).

> **B.**     **Medical Expert Testimony and Plaintiff's Pain**

Plaintiff first argues that the ALJ failed to consider and weigh the testimony from

medical expert Dr. Ezike regarding Plaintiff's back pain.  (Doc. #9, *PageID#* 456).

In finding Plaintiff is able to sustain a reduce range of full-time sedentary work

and denying benefits, the ALJ gave great weight to, and relied significantly upon, the

testimony of the medical expert, Dr. Ezike, finding as follows:

> Dr. Ezike, who testified at the hearing, is a board-certified physician familiar with
> these impairments and with the Social Security Regulations and Listings (Exhibit
> 14F).  Dr. Ezike testified that the claimant could perform a reduced range of
> sedentary work with a sit/stand option (Hearing Testimony).  This is consistent
> with the treatment notes and longitudinal medical history.  It is also consistent with
> the statements of the claimant's primary care physician Dr. Robinson.  The
> undersigned finds that the medical expert's testimony is consistent with the entire
> record of evidence and entitled to great weight.

(*PageID#* 51).  Nonetheless, while the ALJ sets forth strong reasons for providing Dr.

Ezike's testimony with great weight, he fails entirely to discuss those portions of Dr.

Ezike's testimony regarding Plaintiff's reports of pain that were favorable to Plaintiff.  In

doing so, the ALJ erred as he may not ignore evidence favorable to the plaintiff.  Rather,

9

he "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)).

For example, when cross-examined by Plaintiff's counsel, Dr. Ezike stated that it was possible that the more pressure Plaintiff puts on her back, the more pain it could cause. (*PageID# 76*). He agreed that pain cannot be assessed by looking at a patient's MRI, rather "[p]ain is subjective and can vary from person to person." (*PageID# 76*). Dr. Ezike further testified regarding Plaintiff's pain as follows:

| | |
|---|---|
| Attorney: | Could the pathology shown in the imaging reports that you reviewed cause the level of pain that the claimant is complaining of? |
| Dr. Ezike: | Yes, it's possible, yes. |
| Attorney: | You mentioned the sit/stand option. Do you have any ideas to how often the claimant would need to alternate between sitting and standing? |
| Dr. Ezike: | At will. |
| Attorney: | So as little as 10 minutes, as long as one hour depending on what the claimant needs? |
| Dr. Ezike: | Yes. |
| Attorney: | With, with the sort of pathology shown in the claimant's MRIs and her treatment record, is it reasonable that laying down would help mitigate her back pain? |
| Dr. Ezike: | Well, it is possible but for some people laying down makes it better and for some people, it makes it worse. So it's possible depending on in her case. |

Attorney:    Would you agree with me, Doctor, that the complaints of pain that the claimant has made to her doctors have been consistent since her back surgery?

Dr. Ezike:    Yes.

Attorney:    Would you agree with me that those complaints that she's made to her doctors are consistent with the kinds of complaints that she's making her today?

Dr. Ezike:    Yes.

(*PageID#* 76-77).  Despite Dr. Ezike's testimony, and the "great weight" provided to it, the ALJ's decision lacks any discussion regarding the rather extensive testimony Dr. Ezike provided regarding Plaintiff's complaints of pain.  Accordingly, the ALJ failed to properly consider Plaintiff's reports of pain and its effect on her functioning.  In a case such as this, where Plaintiff claims the pain from her back causes her to be disabled, a two-step process is used in evaluating her complaints: (1) the ALJ must determine whether there is "an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) if so, the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *see also* C.F.R. §§ 404.1529, 416.929.

Dr. Ezike testified that Plaintiff has an underlying medically determinable impairment that could reasonably be expected to result in Plaintiff's pain.  (*PageID#* 76); *see* 20 C.F.R. § 404.1529.  Dr. Ezike also acknowledged that the pathology shown in the

11

imaging reports could cause the level of pain Plaintiff is complaining of.  (*Id.*).  Plaintiff

testified she probably spends over 50% of her day lying down due to her back pain.  (*Id.*).

Accordingly, Dr. Ezike's opinion, which was provided great weight by the ALJ, indicates

Plaintiff's symptoms of pain could be produced by her back impairment.  Dr. Ezike

further noted that Plaintiff's reports of pain have been consistent through the record since

her back surgery, as well as with her testimony during the administrative hearing.  (*Id.*).

The ALJ fails to discuss this favorable testimony of Dr. Ezike, yet nevertheless adopts his

RFC.

The Commissioner argues even if this portion of Dr. Ezike's opinion should have

been discussed, it was not worthy of any special deference as it was not a "medical

opinion," but an assessment of Plaintiff's credibility.  (Doc. #12, *PageID#* 480).  This

argument, however, lacks merit.  For example, Dr. Ezike was asked to consider whether

"the pathology shown in the imaging reports the [he] reviewed [could] cause the level of

pain that [Plaintiff] is complaining of," and he responded, "[y]es, it's possible, yes."

(*PageID#* 76).  Thus, such a question did not require Dr. Ezike to assess whether

Plaintiff's reports of pain were credible, but rather whether the level of pain Plaintiff

reported could be consistent with the type of pathology shown in the imaging reports.

Such an inquiry required Dr. Ezike's medical expertise and constitutes a medical opinion

by its very definition.  20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements

from physicians . . . that reflect judgments about the nature and severity of your

impairment(s), including your symptoms . . .").  Regardless of whether the ALJ may

reach the same conclusion on remand after properly considering the entirety of Dr.

Ezike's testimony, he was not permitted in his decision to simply ignore those portions of

Dr. Ezike's testimony that were favorable to Plaintiff while simultaneously providing

great weight to, and relying significantly upon, those portions that were less favorable.

Accordingly, the Court finds the ALJ erred by failing to consider and properly weigh Dr.

Ezike's favorable testimony regarding Plaintiff's reports of back pain.  For these reasons,

Plaintiff's Statement of Errors is well taken.[4]

## VI.    Remand is Warranted

If the ALJ failed to apply the correct legal standards or his factual conclusions are

not supported by substantial evidence, the Court must decide whether to remand the case

for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42

U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's

decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*,

501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous

principle of law, failed to consider certain evidence, failed to consider the combined

effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of*

*Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the

evidence of disability is not overwhelming, and because the evidence of a disability is not

---

[4] Because of this conclusion and the resulting need to remand this case, an in-depth analysis of
Plaintiff's remaining challenges to the ALJ's decision is unwarranted.

strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social

Security Administration pursuant to Sentence Four of § 405(g), due to the problems

identified above. On remand, the ALJ should be directed to: (1) re-evaluate the medical

source opinions of record under the legal criteria set forth in the Commissioner's

Regulations, Rulings, and as required by case law; and (2) determine anew whether

Plaintiff was under a disability and thus eligible for DIB or SSI during the period in

question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for

further proceedings consistent with this Report and Recommendations.

### IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff Deborah Jamison
        was under a "disability" within the meaning of the Social
        Security Act;

3.      This case be remanded to the Commissioner and the
        Administrative Law Judge under Sentence Four of 42 U.S.C.
        § 405(g) for further consideration consistent with this Report;
        and

4.      The case be terminated on the docket of this Court.


February 3, 2015

                                    _____s/Sharon L. Ovington_____
                                          Sharon L. Ovington
                                    Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).

15